## KIP *vs.* MONROE & FLEMING.

In an action on an executory contract for the sale and purchase of stock in an incorporated company, by the vendor, the purchaser may show, in his defense, that at the time of making the contract, the charter of the company, and all its privileges, had, without his knowledge, been revoked and annulled, and the company itself been dissolved and abolished.

APPEAL from a judgment entered upon the report of a referee. The complaint stated that on the 4th day of March, 1856, the plaintiff, being the owner of 100 shares in the stock or capital of the Accessory Transit Company of Nicaragua, agreed with the appellant and Fleming, who were then partners in the business of buying and selling stocks in the city of New York, to sell and deliver to them, and they agreed to purchase, 100 shares of the said capital stock at the price of $23 per share, and six per cent interest from March 4, 1856. The shares were deliverable, and were to be accepted at any time within thirty days from March 4, as the purchasers should elect; that on the 3d day of April ensuing, the plaintiff tendered said shares to the purchasers at their office in the city of New York, and demanded the purchase money, $2311.50; that the shares were not accepted nor the money paid. The difference between the contract price and the market price of the stock, at the time the contract matured, were sought to be recovered as damages to the amount

of $911, with interest from the 3d of April, 1856.   The sep-
arate answer of the appellant Monroe denied every allegation
in the complaint.   It set up, as a defense to the action, that
before the maturity of the alleged contract, the charter of the
Accessory Transit Company of Nicaragua was revoked by the
government of Nicaragua, and its stock became valueless,
and the consideration of the alleged contract failed.   It set
up the further defense, that the plaintiff was not, at the time
of the making of the alleged contract, and continuously there-
after until its maturity, in actual possession of the shares of
stock, or entitled in his own right, or in the right of any third
person, to sell them.

The referee found, as facts, the making of the contract, as
stated in the complaint ; that on the 3d day of April, 1856,
the plaintiff tendered a certificate of 100 shares of said capital
stock to the defendants, at their office in the city of New
York, and demanded the purchase money therefor, and the
defendants refused to accept said shares, and to pay the pur-
chase money agreed to be paid, on the ground that they had
met with losses, and were unable to receive and pay ; that the
100 shares in the stock or capital of the company called the
Nicaragua Transit Company, and mentioned in the contract
between the parties, was understood and treated by them as
100 shares of the Accessory Transit Company of Nicaragua,
and were the same and identical ; that on the 3d day of April,
1856, the market value of said stock was $14 per share ; and
that the plaintiff had suffered damages, by means of the failure
of the defendants to fulfill their said contract with him, to the
amount of $970.52.   And the referee found and reported, as
matter of law, that the plaintiff was entitled to recover against
the defendants the amount of damages suffered by the plain-
tiff, by reason of the defendants' failure to fulfill and keep
their said contract with him, being the sum of $970.52 ; and
he ordered judgment for that sum, with costs.   The defend-
ant Monroe appealed from the judgment.

*M. V. B. Wilcoxson*, for the appellant. I. The contract is void, because it violated the provisions of the statute against stock jobbing. (2 *R. S.* 710, § 6, *4th ed.*) (1.) The just and effectual construction of that statute is, that the party contracting must not only own the stock at the time of its sale, but thence continuously until the contract matures, otherwise a temporary title, acquired merely for the purpose of making a sale, wholly defeats the purpose of the statute. (2.) It is true, the statute does not, in terms, apply to the sale of stock in foreign companies, yet the policy of the statute clearly applies to such a sale, and ought to vacate the contract; (*Mount* v. *Waite*, 7 *John.* 441;) especially in a case like this, where the entire business operations of the company were carried on within this state.

II. The contract was a mere wager or gambling contract, and is consequently void as against public policy, and the provisions of the statute against betting and gambling, and wagers on the price of stock. (2 *R. S.* 662, § 8; 710, § 7, *4th ed.*) (1.) Neither party, at the time the contract was made, intended that the stock should be delivered; but the understanding on both sides was, that the difference between the contract and market price should be paid to the pretended vendor or purchasers, as the fluctuations in the price of the stock might determine. (2.) The presumption of good faith, arising out of the fact that the stock stood in the name of the plaintiff at the date of the contract, is destroyed by his having parted with it before the contract matured, and his having none standing in his name on the books of the company at its maturity; as also by the evidence, in the case, of the real nature of the agreement.

III. The contract is void under the statute of frauds, because the memorandum thereof is not signed by the defendant Monroe; neither is it expressed on its face to be signed by Fleming in his own behalf, and that of Monroe, but solely on behalf of Fleming.

IV. The referee erred in refusing to admit the evidence

offered·by the defendant, at folios 52, 53, 54 of the case.   Mr. Monroe proposed to show that both parties to the contract, at the time it was made, contemplated and understood, as the very basis of it, the subsisting and operating legal existence of the Accessory Transit Company as an incorporated company, (and the sale and purchase necessarily implied this,) that it was possessed of a valuable charter franchise, of costly steam vessels, wharves and stores, and all the equipments of an extensive marine transportation company; 'when, in truth, before the contract was made, the company had been swept out of existence, its charter revoked, and its property had all been confiscated and appropriated by the government of Nicaragua to its own use.   These facts, if proven, would have shown that the parties contracted in ignorance of material facts respecting the actual intrinsic state of the subject matter of the contract, and that the contract was therefore equitably rescinded.

V. The measure of damages, under the facts as disclosed in the case, should have been the plaintiff's actual damages; that is, the depreciation, if any, occurred in the market value of the stock standing in the name of Clerke, between the time of its purchase by the plaintiff to meet this contract, and the time when this contract matured.

VI. The referée erred in refusing to grant the motion of the counsel for the plaintiff to dismiss the complaint.   The whole testimony in the case tends strongly to the conclusion that the alleged partnership, if it really existed, was formed principally for the purpose of gambling in stocks, and was consequently void, being against public policy.

*H. G. De Forest,* for .the plaintiff.   I. The proof is clear that the defendants were copartners.

II. The plaintiff being the owner of sufficient stock to fill the contract, at the time of the sale, it is a valid contract within the statute as to stock-jobbing.   (2 *R. S.* 710, § 6, *marg. 4th ed.   Frost* v. *Clarkson,* 7 *Cowen,* 24.)

Kip v. Monroe.

III. The statute in question applies only to shares in incorporated companies, incorporated under the laws of the United States, or one of the states. It does not appear, either on the pleadings or proofs, that the transit company was incorporated at all. If not incorporated, or if a corporation under the laws of Nicaragua, the statute does not apply. (2 R. S. 710, §§ 6, 7.)

IV. The referee properly excluded the testimony offered by the defendant, as to the decree of the Rivas government. (1.) The sale was of a chose in action, without any express warranty, and no fraud or concealment is alleged. (*Johnson* v. *Titus and cases cited*, 2 *Hill*, 606. *Cunningham* v. *Spier*, 13 *John*. 392.) (2.) It did not appear, nor did the defendant offer to show, that the transit company was a creature of the Nicaraguan government. Nor that the government of Rivas or Nicaragua had any right to revoke the decree. Nor that the shares were intrinsically less valuable in consequence of revocation. Nor that the depreciation in market value was occasioned by the alleged action of the government. Nor that the alleged revocation was not fully justified for causes specified in the charter. (3.) The shares sold were not distinct shares in the capital, or in the franchise, or in the property of the company; but merely a right to participate in the earnings, or, in case of a dissolution, in the assets. (*Angell & Ames on Corp*. 116, § 1.) (4.) For aught that appears, a revocation of the charter was a beneficial thing to the stockholders. (5.) It appears affirmatively that the shares had a fixed market value from the time of sale up to the time of trial.

V. The proof of tender of the stock was sufficient. The refusal of the defendants to take it, which is expressly alleged in the complaint and clearly proved, was a waiver of the tender. (*Stone* v. *Sprague*, 20 *Barb*. 509. *Holmes* v. *Holmes*, 12 *id*. 137.)

*By the Court*, ROOSEVELT, J. The defendants, although partners, carried on their business in the sole name of Fleming; and the present action is brought on the following contract made by them in that manner:

"100 shares 23 B 30.          New York, March 4th, 1856.

I have purchased of Isaac Kip, jun., one hundred (100) shares of the stock of the Nicaragua Transit Company at twenty-three (23) per cent, payable and deliverable, buyer's option, in thirty days, with interest at the rate of six per cent per annum.                    A. FLEMING."

On the trial before the referee the defendant offered to prove that the Rivas government (of Nicaragua) made a certain decree, a certified copy of which was produced, duly authenticated, and that this decree was promulgated in the public square of Granada, the place where decrees are promulgated, the residence of the government, about 18th February, 1856. That the government which made the decree was the government at the time, and had full power and right to make such decree, and that such decree had been carried into effect. The referee, however, excluded the evidence, and, as we think, erroneously. Had the decree been admitted, it would have shown, or at least would have tended to show, that at the time of making the contract, the charter of the company and all its privileges had, without the knowledge of the defendants, been "revoked and annulled," and the company itself been "dissolved and abolished." It would, in other words, have shown that the thing contracted for had substantially no existence. What the defendants bought, or agreed to buy, was 100 shares of stock in a living company, and not a proportionate, undivided interest in the remaining assets of a dead company in the hands of a receiver.

In the case of *Benedict* v. *Field*, (16 *N. Y. R.* 595,) the court of appeals held that, upon an executory contract for the delivery of goods, to be paid for on arrival, in the notes of a third party, if that party becomes insolvent before delivery, the seller is not bound to deliver the goods and accept the

notes, although the notes at the time may not·be entirely worthless. So that, stating the transaction in another form as an executory purchase of notes to be delivered and paid for in goods at a future time, the authority is precisely in point. The notes of an individual, and the stock certificates of a company, are equally choses in action, and so far as insolvency is concerned, stand on the same footing. The fact that the insolvency in the present case occurred before, instead of after, the date of the contract, can make no difference, as the defendants had no knowledge of the revocation till a subsequent period.

The report of the referee, and the judgment entered thereon, should be set aside and a new trial had; costs to abide the event.

